**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**Case No. 1:14-CV-00195**

| | |
|---|---|
| JENEEN BROWN, individually and as a representative of the Classes,<br><br>                   Plaintiff,<br><br>v.<br><br>DELHAIZE AMERICA, LLC, FOOD LION, LLC, and SINGLESOURCE SERVICES CORPORATION,<br><br>                   Defendants. | **COMPLAINT – CLASS ACTION**<br><br>**(JURY TRIAL DEMANDED)** |

Plaintiff Jeneen Brown ("Brown"), on behalf of herself and the Classes set forth below, and in the public interest, brings this Class Action Complaint against Delhaize America, LLC, Food Lion, LLC, and SingleSource Services Corporation, and alleges as follows:

<u>**INTRODUCTION**</u>

1.    This putative class action is brought pursuant to the Fair Credit Reporting Act ("FCRA") against a conglomerate of supermarket chains, and the consumer reporting agency it uses to conduct background checks on employees and job applicants. Defendants routinely violated FCRA's core protections by:

    a)  procuring background checks on employees and job applicants without making a legally required stand-alone disclosure or receiving written authorization, as required by 15 U.S.C. § 1681b(b)(2);

1

b) failing to provide employees and job applicants with pre-adverse action notice and a copy of the consumer report prior to taking adverse action against them as required by 15 U.S.C. § 1681b(b)(3);

c) failing to provide consumers with a complete copy of their consumer files upon request, in violation of 15 U.S.C. § 1681g.

2.     Defendants' violations were committed pursuant to uniform policies and procedures. Accordingly, Plaintiff seeks to represent those similarly situated, and seeks statutory damages, punitive damages, attorneys' fees, costs and all other relief available under FCRA.

## THE PARTIES

3.     Plaintiff Jeneen Brown ("Brown") is a resident of Beaufort, South Carolina.

4.     Delhaize America, LLC ("Delhaize") is the parent company to Bottom Dollar Food, Food Lion, Hannaford, Harvey's Supermarket and Sweetbay, which are supermarket chains that do business throughout the United States, including in the Middle District of North Carolina.[1]  Delhaize maintains its headquarters in Salisbury, North Carolina. There are more Delhaize-owned grocery stores in North Carolina than in any other state.

5.     Food Lion, LLC ("Food Lion") is Delhaize's largest subsidiary. Food Lion

---

[1]  Delhaize's parent company is Delhaize Group. Delhaize Group is a publicly traded entity and has a website at www.delhaizegroup.com/en/Home.aspx. Detailed information about Delhaize can be found in Delhaize Group's Annual Report (2012) (available at www.delhaizegroup.com/annualreport/en) (last visited 2/20/2014).

2

operates over 1,000 grocery stores across the United States, including in the Middle District of North Carolina. Food Lion's website is www.foodlion.com and detailed information about its business can be found in Delhaize Group's Annual Report. Food Lion maintains its headquarters in Salisbury, North Carolina. There are more Food Lion grocery stores in North Carolina than in any other state.

6. SingleSource Services Corporation ("SingleSource") is a consumer reporting agency that provides credit reports, including background checks, on employees and job applicants.

7. SingleSource does business throughout the United States, including in the Middle District of North Carolina. SingleSource's website is www.singlesourceservices.com and general information about its business can be found at www.singlesourceservices.com/pages/page.aspx/633/622/About_Us (last visited 2/20/2014).

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question.

9. This Court has personal jurisdiction over Defendants pursuant to *International Shoe Co. v. Washington*, 326 U.S. 210 (1945), and its progeny because Delhaize and Food Lion are headquartered in this District and SingleSource conducts substantial business in this District.

3

10.     Venue is proper pursuant to 28 U.S.C. § 1392(b)(2) because a substantial part of the events giving rise to this action occurred in this District; and 28 U.S.C. § 1391(b)(3) because Defendants are subject to personal jurisdiction in this District.

## STATUTORY BACKGROUND

11.     Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing; and second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.  In addition, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.  15 U.S.C. § 1681.

12.     In order to ensure that consumers are aware that reports are being generated about them, and to give consumers opportunities to review the reports and contest inaccuracies and illegalities in the report, Congress established a notification and disclosure regime.  Many of these notices and disclosures are specifically designed to govern job applicants and employees whose employers perform background screening on their employees.  As discussed below, Defendants routinely violated these basic FCRA requirements.

4

## I.   FCRA REQUIREMENTS

### a. Stand-Alone Disclosure and Written Authorization

13.   Congress was particularly concerned about the use of consumer reports by employers to deny otherwise qualified job applicants or to take other adverse actions against employees.  Accordingly, Congress required that before any consumer report was procured for employment purposes:

- "a clear and conspicuous written disclosure must be made to the consumer, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes"; and

- "that the consumer must give "written authorization."

15 U.S.C. §1681b(b)(2).  These requirements are commonly referred to as the "stand-alone disclosure requirement" and the "written authorization requirement."

14.   Delhaize routinely and systematically violated these FCRA protections by failing to provide a stand-alone disclosure informing employees and job applicants that consumer reports about them were being procured, and by failing to obtain written authorization before obtaining the reports.

### b. Pre-Adverse Action Notification

15.   The FCRA requires that any person who uses a report for employment purposes must:

before taking any adverse action based in whole or in part on the report... provide to the consumer to whom the report relates—

5

a) a copy of the report; and

b) a description in writing of the rights of the consumer under this subchapter, as prescribed by the [Consumer Financial Protection] Bureau under section 1681g(c)(3).

15 U.S.C. § 1681b(b)(3).

16.     The FCRA defines adverse action both as "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee" and as "any action taken or determination that is… adverse to the interests of the consumer." *See* 15 U.S.C. §§ 1681a(k)(1)(B)(ii) and 1681a(k)(1)(B)(iv)(II).

17.     Delhaize and Food Lion routinely and systematically violated these core FCRA protections by taking adverse action against employees and job applicants based on their reports without providing the required pre-adverse action notice.

### c.  Full File Disclosure

18.     In addition, when the subject of a report requests a copy of their file from the consumer reporting agency ("CRA"), the CRA is required to provide the consumer with *all* the information in the consumer's "file."   15 U.S.C. §§ 1681g(a)(1)(A) and 1681j(a)(1)(A).

19.     The FCRA defines a consumer "file" as encompassing "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored."   15 U.S.C § 1681a(g).   This definition of "file" is substantially broader than the definition of a "report."   *Compare id.,* 15 U.S.C. § 1681a(d)(1).

6

20.    The requirement that CRAs provide consumers with their full files upon request is commonly referred to as the "full file disclosure" requirement.

21.    SingleSource routinely and systematically violated this core FCRA protection by failing to disclose to consumers all the information in their files upon request.

## FACTS RELATING TO PLAINTIFF BROWN

22.    Before applying for a position at Food Lion, Brown worked for approximately five years as the manager of a salon.  In April of 2013, however, the salon went out of business.

23.    On or about early May 2013, Brown applied for a job with Food Lion online.

24.    Food Lion's online application can be obtained from its website at https://hrweb.foodlion.com/ATS/ATS/JobBoard/NewCandidateExt.aspx.   A printout of Brown's responses to the questions on the online job application is attached hereto as Exhibit A.[2]

25.    Food Lion's online application form failed to include a clear and conspicuous disclosure, in a document consisting solely of the disclosure, that Delhaize would obtain a consumer report on Brown.  The online application also failed to request Brown's written authorization for Delhaize to obtain such a report.

---

[2] The Exhibits attached hereto have had personal identifiers and attorney-client privileged communications redacted.

26.     On or about May 15, 2013, Food Lion hired Brown as a cashier for its store at 313 Laurel Bay Road in Beaufort, South Carolina.

27.     Though she was hired as a cashier, Brown's manager Tanya Manigo ("Manigo"), quickly recognized Brown was overqualified and promoted her to a customer service manager.

28.     On May 31, 2013, however, Manigo told Brown that she had to terminate her employment because SingleSource had concluded that Brown "Does Not Meet Company Standards" for an employee.

29.     This conclusion was based on an unauthorized consumer report SingleSource had generated at Delhaize's request.

30.     Brown was shocked and protested to Manigo that there must be a mistake because her only criminal conviction was the misdemeanor that she disclosed on her employment application.

31.     Manigo told Brown that she had only received an email with the adjudication from SingleSource stating Brown "Does Not Meet Company Standards" (the "Adjudication Email") and that she was required to terminate her.

32.     Manigo then printed out and handed to Brown a copy of the Adjudication Email, a copy of Brown's rights under the FCRA, and a letter titled "ADVERSE ACTION NOTICE REGARDING EMPLOYMENT."   These documents are attached hereto as Exhibit B ("Termination Packet").

33.     The Termination Packet included instructions from Delhaize telling Manigo

8

to terminate Brown and then give her a copy of the list of rights and the notice.

34.     The Termination Packet also stated that "the company that processes the requests on our behalf will mail a copy of the record(s) located as well as a copy of the Adverse Action Form to the associate's address within 3 business days." *Id.*

35.     Included in the Termination Packet is an email dated May 28, 2013.  This email is from a sender identified as "SingleSource" with the email address of checkit@singlesourceservices.com.  Exhibit B, p.4.

36.     The May 28, 2013 email was sent to an email address which is identified in the email as "backgroundchecks."  The printout of the email does not contain the precise email address for the recipient, i.e., it contains the short name for the recipient of "backgroundchecks," but does not contain an @ symbol followed by an email address.

37.     However, the information printed in the footer at the bottom of the page that was printed and given to Plaintiff indicates that the address to which "backgroundchecks" forwarded the email is a Delhaize email address and that it would end with @delhaize.com.

38.     This is apparent because the notation "mail.delhaize.com/owa" indicates that the server associated with the recipient of the email directed to "backgroundchecks" is mail.delhaize.com.

39.     This means that the likely email address for the recipient of the Adjudication Email sent by SingleSource is backgroundchecks@delhaize.com.

40.     The Termination Packet also indicates that on May 31, 2013 the email from

9

SingleSource was forwarded from "backgroundchecks" to four additional and separate email addresses. Two of the addresses are encoded with the store number for the Food Lion store where Brown worked, store number 0945. The recipients associated with these email addresses ("S0945SSM" and "S0945CM") are the email addresses associated with the store's managers, one of whom was Manigo.

41. The other two email addresses are associated with employees of Delhaize America who provide human resource supervision to Food Lion stores.

42. One of the Delhaize employees who was a recipient of the May 31 email is Marilyn Hesters. Hesters is a Human Resources Director.

43. The other Delhaize employee who was a recipient of the May 31 email is Billy Slocum. Slocum's title is "Director Operations Atlantic Division." Slocum works in North Carolina.

44. Prior to being terminated, Brown did not receive:

    a)     a copy of the Adjudication Email;

    b)     a copy of the full SingleSource report on which the Adjudication Email was based; or

    c)     a summary of her rights under the FCRA.

45. Brown called SingleSource that same day because she still did not know why she had been adjudicated as "Does Not Meet Company Standards."

10

46.     The SingleSource representative to whom Brown spoke told Brown that she had been terminated because SingleSource had determined that she was a convicted felon.

47.     Knowing SingleSource was wrong, that same day, May 31, 2013, Brown faxed records regarding her criminal history to SingleSource, and called SingleSource to verify that it had received her fax.

48.     SingleSource confirmed that it had received the fax and that it should have reported the conviction as a misdemeanor.

49.     Three days after she was terminated, on June 3, 2013, Brown received a copy of a consumer report from SingleSource.  The report Brown received is attached hereto as Exhibit C ("Full Report").

50.     Brown did not receive a copy of the Adjudication Email with this report.

51.     Brown also received a letter from SingleSource, titled "Adverse Action Notice," which is on Delhaize America letterhead and is attached as Exhibit D.

52.     Brown did not receive a copy of the Summary of Rights prescribed by the Consumer Financial Protection Bureau under 15 U.S.C. § 1681g(c)(3) along with Exhibits C and D.

53.     On or about June 5, 2013, Brown requested her full file from SingleSource. Brown's full file request letter is attached hereto as Exhibit E.

54.     SingleSource responded to Brown's request but did not provide Brown's full file to her.  SingleSource's response to Brown's request is attached hereto as Exhibit

11

F.

55.     SingleSource withheld documents in Brown's file from its response to her request.  Critically, SingleSource did not provide Brown with a copy of the Adjudication Email it sent to "backgroundchecks" on May 28, 2013.  *Id.*

56.     On or about June 6, 2013, Brown contacted Food Lion and requested a copy of her completed online job application, as well a copy of any authorization or disclosure authorizing Food Lion to procure a consumer report.  In that same letter, Brown also requested that Food Lion provide her with a copy of the report it received from SingleSource.  Brown's request letter to Food Lion is attached hereto as Exhibit G.

57.     Food Lion refused to provide the documents and told Brown they would "have to be subpoenaed."  Food Lion's response is attached hereto as Exhibit H.

## FACTS RELATING TO DEFENDANTS' SYSTEMATIC AND REPEATED FCRA VIOLATIONS

### I.     FAILING TO PROVIDE STAND-ALONE DISCLOSURES OR RECEIVE WRITTEN AUTHORIZATION

58.     Delhaize oversees the human resources of its subsidiaries, including Food Lion, and performs numerous human resources tasks for its subsidiaries.

59.     One of the human resources tasks that Delhaize manages for its employees is the employment application process.

60.     Specifically, Delhaize contracts with a company called First Advantage Corporation ("First Advantage") to provide Delhaize with an online application tool as well as in-store application kiosks.

12

61.    First Advantage is a Delaware Corporation with corporate headquarters in Alpharetta, Georgia.

62.    First Advantage is a consumer reporting agency. First Advantage's website notes that it, "along with other employment-screening companies[,] must adhere to … regulations, including in the U.S. the Fair Credit Reporting Act."[3]

63.    First Advantage owns SingleSource.

64.    The First Advantage tool that Delhaize purchased and utilizes for its online application process is called First Advantage Hiring Management Solutions ("HMS").

65.    One of the reasons Delhaize uses First Advantage's HMS tool for its employment applications is that First Advantage offers an integrated service which combines information received in employment applications with Delhaize's applicant tracking software.

66.    This integrated system is used by Delhaize and First Advantage to procure background check reports on applicants and employees, including Brown.

67.    Specifically, when an applicant applies to a Delhaize subsidiary online or through an application kiosk, the applicant's application information is stored electronically by First Advantage.

68.    The online application form does not contain a clear and conspicuous written disclosure to the consumer, in a document that consists solely of the disclosure,

---

[3] http://www.fadv.com/Why-First-Advantage/Compliance.aspx, last visited Feb. 18, 2014.

13

that a consumer report may be obtained by Delhaize for employment purposes, but Delhaize routinely requests and procures reports from SingleSource about applicants and employees in spite of this fact.

69.      When Delhaize requests that a background check be performed on an applicant, First Advantage conveys the information the applicant entered into First Advantage's job application interface (i.e. either online or through a kiosk) and otherwise contained in the Delhaize applicant tracking system to SingleSource.  Using the information received from First Advantage, SingleSource generates a consumer report on the applicant, which it then sends to Delhaize.

## II.      PRE-ADVERSE ACTION NOTICE VIOLATIONS

70.      Delhaize sets company policy for its subsidiaries with respect to the circumstances in which consumer reports will be requested.

71.      Delhaize sets company policy for its subsidiaries with respect to which elements of someone's criminal background will disqualify them from holding positions at Delhaize subsidiaries.

72.      Delhaize provided SingleSource with information about its criminal background disqualification criteria.  This listing of criminal backgrounds which will disqualify applicants and employees from employment is commonly referred to as a "grid."

14

73. Delhaize contracts with SingleSource to apply Delhaize's grid to information SingleSource learns about applicants and employees on whom SingleSource is conducting background checks.

74. Based on criteria specified by Delhaize, SingleSource adjudicates these individuals as "Meets Company Standards" or "Does Not Meet Company Standards."

75. When SingleSource adjudicates someone, it sends an Adjudication Email to the "backgroundchecks" email address informing Delhaize of the adjudication.

76. When an employee is adjudicated as "Does Not Meet Company Standards" by SingleSource, Delhaize forwards the Adjudication Email to the managers at the store where the individual was employed along with instructions to terminate the individual.

77. Delhaize contracts with SingleSource to send individuals who are adjudicated as "Does Not Meet Company Standards" a letter and a copy of the report SingleSource prepared on the individual.

78. The timing of this system ensures that individuals are adjudicated as "Does Not Meet Company Standards" and terminated ***before*** the employee receives *anything* from either entity. The employee has no opportunity to review the full report on which the adjudication was based, no opportunity to review the Adjudication Email, and no opportunity to review the summary of rights mandated by the Consumer Financial Protection Bureau before being summarily adjudicated and terminated.

79. Both Delhaize and Food Lion took adverse action against Brown: Delhaize when it sent the email to Brown's manager instructing that Brown be terminated, and

15

Food Lion when it terminated Brown's employment. Brown did not receive pre-adverse action notice before either entity took adverse action against her.

## III.   FULL FILE DISCLOSURE VIOLATIONS

80.     SingleSource routinely sends its customers Adjudication Emails.

81.     SingleSource's customers routinely rely solely on the Adjudication Emails to make employment decisions, without ever reviewing the full reports associated with the Adjudication Emails.

82.     However, when SingleSource responds to requests from consumers for consumer reports sent to employers and for their full consumer files, SingleSource does not provide the consumers with a copy of the Adjudication Emails it sends to employers.

83.     SingleSource's policy is to withhold the Adjudication Emails it sends to its customers as well as the criteria on which the adjudications are based. This failure violates 15 U.S.C. §§ 1681g(a)(1)(A) and 1681j(a)(1)(A).

84.     Both the report on which the adjudication is based and the Adjudication Email itself are unquestionably "consumer reports" under the FCRA because they are both written communications by a CRA bearing on a consumer's character, personal characteristics, general reputation, or mode of living, which is used or expected to be

16

used in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for employment.[4]  15 U.S.C. § 1681a(d)(1).

## CLASS ACTION ALLEGATIONS

85.     Brown asserts Count 1 against Delhaize on behalf of the "Improper Disclosure Class" defined as follows:

> **Improper Disclosure Class:**  All Delhaize subsidiary employees and job applicants in the United States who were the subject of a consumer report that was procured by Delhaize within two years of the filing of this complaint through the date of final judgment in this action.

86.     Brown asserts Count 2 against Delhaize and Food Lion on behalf of the "Pre-Adverse Action Notice Class" defined as follows:

> **Pre-Adverse Action Notice Class:**  All Delhaize subsidiary employees and job applicants against whom adverse employment action was taken based, in whole or in part, on information contained in a consumer report generated by SingleSource within two years of the filing of this complaint through the date of final judgment in this action.

87.     Brown asserts Counts 2 and 3 against Food Lion on behalf of the "Food Lion Sub-Class" defined as follows:

> **Food Lion Sub-Class:**  All Food Lion employees and job applicants against whom adverse employment action was taken based, in whole or in part, on information contained in a consumer report generated by SingleSource within two years of the filing of this complaint through the date of final judgment in this action.

---

[4] *See, e.g., Godby v. Wells Fargo Bank*, 599 F. Supp. 2d 934 (S.D. Ohio 2008); *see also* Letter from Clarke Brinkerhoff, FTC, to Paul Schreiber (Mar. 3, 1998) (available at www.ftc.gov/os/statutes/fcra/schieber.shtm (last visited Feb. 18, 2014)).

88.     Brown asserts Count 4 against SingleSource on behalf of a "File Disclosure Class," defined as follows:

> **File Disclosure Class:** All persons who were the subject of a background report furnished by SingleSource for employment purposes and about whom SingleSource sent an Adjudication Email to an employer or prospective employer and who requested their files from SingleSource within five years of the filing of this complaint through the date of final judgment in this action.

89.     <u>Numerosity</u>: The Classes are so numerous that joinder of all Class members is impracticable. Delhaize regularly obtains and uses information in consumer reports to evaluate employees and job applicants, and Delhaize and Delhaize's subsidiaries, including Food Lion, frequently rely on such information, in whole or in part, as a basis for taking adverse employment action. The size and scale of Defendants' operations ensures that the number of members in each class will be in the thousands.

90.     <u>Typicality</u>: Brown's claims are typical of the Class members' claims. The FCRA violations suffered by Brown are typical of those suffered by other Class members, and Delhaize, Food Lion, and SingleSource treated Brown consistent with other Class members in accordance with their standard policies and practices.

91.     <u>Adequacy</u>: Brown will fairly and adequately protect the interests of the Classes, and has retained counsel experienced in complex class action litigation.

92.     <u>Commonality</u>: Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including but not limited to:

a. Whether Delhaize obtained background checks on its subsidiaries' employees and job applicants;

b. Whether Delhaize has violated the FCRA by procuring consumer reports without providing the proper disclosure;

c. Whether Delhaize has violated the FCRA by taking adverse action against its subsidiaries' employees and job applicants on the basis of information in a consumer report, without providing pre-adverse action notice;

d. Whether Food Lion has violated the FCRA by taking adverse action against its employees and job applicants on the basis of information in a consumer report, without providing pre-adverse action notice;

e. Whether SingleSource has violated the FCRA by failing to provide to consumers, upon request, all information in their file;

f. Whether Delhaize's FCRA violations were willful;

g. Whether Food Lion's FCRA violations were willful;

h. Whether SingleSource's FCRA violations were willful;

i. The proper measure of statutory and punitive damages; and

j. The proper form of declaratory relief.

93. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Classes predominate over any questions affecting only individual Class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Delhaize, Food Lion, and SingleSource's conduct described in this complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA. Class members do not have an interest in pursuing separate actions against Defendants, as the

19

amount of each Class member's individual claims is small compared to the expense and burden of individual prosecution, and Brown is unaware of any similar claims brought against Defendants by any Class members on an individual basis. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

94. The names and addresses of the Class members are available from Defendants' records.

## COUNT I
### Delhaize Causes Consumer Reports to be Procured Without Authorization or Disclosure
### 15 U.S.C. § 1681b(b)(2)
### *Asserted on Behalf of Brown and the Improper Disclosure Class*

95. Delhaize has violated the FCRA by procuring consumer reports on Brown and the other Improper Disclosure Class members without making the required disclosure or obtaining proper authorization. *See* 15 U.S.C. § 1681b(b)(2).

96. Delhaize acted willfully and in deliberate or reckless disregard of its obligations and the rights of Brown and the other Improper Disclosure Class members.

97. Delhaize's willful conduct is reflected by, *inter alia*, the following:

   a. The FCRA was enacted in 1970; Delhaize has had over four decades to become compliant;

   b. Delhaize is a large corporation with access to legal advice through its

own general counsel's office and outside employment counsel. Yet, there is no contemporaneous evidence that it determined that its conduct was lawful;

c. Delhaize's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute;

d. Delhaize certified to SingleSource that its subsidiaries would provide a proper disclosure and obtain a proper authorization prior to procuring consumer reports for employment purposes;

e. SingleSource offers its clients a free legal help line to advise them about legal issues that arise in the process of procuring consumer reports;

f. The Copy of Rights Delhaize has its subsidiaries give to their employees and job applicants says "[y]ou must give your consent for reports to be provided to employers";

g. Delhaize's similarly situated competitors do not cause consumer reports to be procured unless a proper disclosure has been made and a proper authorization has been received;

h. Despite the plain statutory text and there being a depth of guidance, Delhaize has adopted a policy of causing its subsidiaries to procure consumer reports on their employees and job applicants without its subsidiaries getting their authorization and disclosing to them that reports will be procured on them.

98.    Brown and the Improper Disclosure Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

99.    Brown and the Improper Disclosure Class are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2).

100.    Brown and Improper Disclosure Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

21

<u>**COUNT II**</u>
**Delhaize Takes Adverse Employment Action Without Pre-Adverse Action Notice**
**15 U.S.C. § 1681b(b)(3)**
*Asserted on Behalf of Brown and the Pre-Adverse Action Notice Class*

101.    Delhaize has violated the FCRA by taking adverse action against Brown
and the other Pre-Adverse Action Notice Class members based, in whole or in part, on
consumer report information without providing pre-adverse action notice. *See* 15 U.S.C.
§ 1681b(b)(3).

102.    Delhaize acted willfully and in deliberate or reckless disregard of its
obligations and the rights of Brown and the other Pre-Adverse Action Notice Class
members.

103.    Delhaize's willful conduct is reflected by, *inter alia*, the following:

a. The FCRA was enacted in 1970; Delhaize has had over four decades to
   become compliant;

b. Delhaize is a large corporation with access to legal advice through its
   own general counsel's office and outside employment counsel. Yet,
   there is no contemporaneous evidence that it determined that its conduct
   was lawful;

c. Delhaize's conduct is inconsistent with the FTC's longstanding
   regulatory guidance, judicial interpretation, and the plain language of
   the statute;

d. Delhaize certified to SingleSource that it would provide pre-adverse
   action notice;

e. Delhaize's similarly situated competitors provide pre-adverse action
   notice;

f. Despite the plain statutory text and there being a depth of guidance,
   Delhaize has adopted a policy of taking adverse action against its
   subsidiaries employees and job applicants without giving them pre-

adverse action notice. By adopting this policy, Delhaize voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless; and

g. Delhaize knew that SingleSource had not provided a copy of any consumer report to the consumers at the time that SingleSource instructed Delhaize's subsidiaries to terminate the employees because the same packet of information indicated the report would not be sent until three days later.

104. Brown and the Pre-Adverse Action Notice Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

105. Brown and the Pre-Adverse Action Notice Class are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2).

106. Brown and the Pre-Adverse Action Notice Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## <u>COUNT III</u>
**Food Lion Takes Adverse Employment Action Without Pre-Adverse Action Notice**
**15 U.S.C. § 1681b(b)(3)**
*Asserted on Behalf of Brown and the Food Lion Sub-Class*

107. Food Lion has violated the FCRA by taking adverse action against Brown and the other Food Lion Sub-Class members based, in whole or in part, on consumer report information without providing pre-adverse action notice. *See* 15 U.S.C. § 1681b(b)(3).

108. Food Lion acted willfully and in deliberate or reckless disregard of its obligations and the rights of Brown and other Food Lion Sub-Class members.

109. Food Lion's willful conduct is reflected by, *inter alia*, the following:

23

a. The FCRA was enacted in 1970; Food Lion has had over four decades to become compliant;

b. Food Lion is a large corporation which has access to legal advice through its own general counsel's office and outside employment counsel. Yet, there is no contemporaneous evidence that it determined that its conduct was lawful;

c. Food Lion's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute;

d. Food Lion certified to SingleSource that it would provide pre-adverse action notice;

e. Food Lion's similarly situated competitors provide pre-adverse action notice before taking adverse employment action based on a consumer report;

f. Despite the plain statutory text and there being a depth of guidance, Food Lion has adopted a policy of taking adverse action against its subsidiaries' employees and job applicants without giving them pre-adverse action notice. By adopting this policy, Food Lion voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless; and

g. Food Lion knew that SingleSource had not provided a copy of any consumer report to the consumer at the time that SingleSource instructed Food Lion to terminate the employee because the same packet of information indicated the report would not be sent until three days later.

110. Brown and the Food Lion Sub-Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

111. Brown and the Food Lion Sub-Class are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2).

24

112. Brown and the Food Lion Sub-Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## COUNT IV
**SingleSource Does Not Provide All Information in Consumers' Files When Requested**
**15 U.S.C. §§ 1681g(a)(1)(A) and 1681j(a)(1)(A)**
*Asserted on Behalf of Brown and the File Disclosure Class*

113. SingleSource has violated the FCRA by, upon request, failing to produce to Brown and the other File Disclosure Class members all of the information on file, sources, and report recipients. *See* 15 U.S.C. §§ 1681g(a)(1)(A) and 1681j(a)(1)(A).

114. The foregoing violations were willful. SingleSource acted in deliberate or reckless disregard of its obligations and the rights of Brown and the File Disclosure Class members under 15 U.S.C. § 1681e(a).

115. SingleSource's willful conduct is reflected by, *inter alia*, the following:

    a. The FCRA was enacted in 1970; SingleSource has had over four decades to become compliant;

    b. SingleSource is a large corporation which specializes in furnishing consumer reports for employment purposes and has access to legal advice through its own general counsel's office and outside employment counsel. Yet, there is no contemporaneous evidence that it determined that its conduct was lawful;

    c. SingleSource's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute;

    d. The National Association of Professional Background Screeners instructs its members to, upon request, provide to consumers all information in their file;

    e. The Copy of Rights SingleSource sends to its clients to give to

25

consumers says:

> "**You have the right to know what is in your file.** You may request and obtain all the information about you in the files of a consumer reporting agency" (emphasis in original).

    f.   Despite the plain statutory text and there being a depth of guidance, SingleSource adopted a policy of systematically failing to disclose to consumers all information in their file. By adopting such a policy, SingleSource voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

116.   Brown and the File Disclosure Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

117.   Brown and the File Disclosure Class are also entitled to punitive damages and for these violations, pursuant to 15 U.S.C. § 1681n(a)(2).

118.   Brown and the File Disclosure Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## **PRAYER FOR RELIEF**

WHEREFORE, Brown, on behalf of herself and the Classes, prays for relief as follows:

    A.    Determining that this action may proceed as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure;

    B.    Designating Brown as class representative and designating Brown's counsel as counsel for the Classes;

    C.    Issuing proper notice to the Classes at Defendants' expense;

    D.    Declaring that Defendants committed multiple, separate violations of the FCRA;

E.  Declaring that Defendants acted willfully in deliberate or reckless disregard of Brown's rights and their obligations under the FCRA;

F.  Awarding statutory damages and punitive damages as provided by the FCRA;

G.  Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

H.  Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Brown and the Classes demand a trial by jury.

This 7th day of March, 2014.

/s/ F. Hill Allen
F. Hill Allen
North Carolina State Bar No. 18884
**THARRINGTON SMITH, L.L.P.**
P.O. Box 1151
Raleigh, NC 27602-1151
Telephone: 919-821-4711
Facsimile: 919-829-1583
E-mail: hallen@tharringtonsmith.com

NICHOLS KASTER, PLLP
E. Michelle Drake, MN Bar No. 0387366*
Daniel C. Bryden, MN Bar No. 302284*
        *appearing by *special appearance*
4600 IDS Center

27

80 S 8th Street
Minneapolis, MN 55402
Telephone: 612-256-3200
Facsimile: 612-338-4878
drake@nka.com
dbryden@nka.com

ATTORNEYS FOR PLAINTIFF